517 F.2d 453
 Fed. Sec. L. Rep. P 95,076
EXCHANGE NATIONAL BANK OF CHICAGO et al., Petitioners,
v.
Inzer B. WYATT, United States District Judge, Southern
District of New York, and Roy Babitt, Bankruptcy
Judge, Southern District of New York,
Respondents.
SECURITIES AND EXCHANGE COMMISSION, Plaintiff,
v.
WEIS SECURITIES, INC., et al., Defendants.
 Nos. 946, 947, Dockets 75-3012, 75-6004.
 United States Court of Appeals,
Second Circuit.
 Argued April 10, 1975.
Decided April 24, 1975.
 
 Daniel A. Zimmerman, New York City, for petitioners.
 
 
 1
 Alan C. Winick, and I. Alan Harris, New York City, of counsel for petitioners Robert E. Slater, All-American Life & Casualty Co., General United Life Ins. Co., and O'Hare International Bank (N.A.).
 
 
 2
 Alan C. Winick, and Hahn, Hessen, Margolis & Ryan, New York City, of counsel for petitioner Exchange National Bank of Chicago.
 
 
 3
 Theodore H. Focht, Gen. Counsel, Securities Investor Protection Corp., Washington, D. C. (Wilfred R. Caron, Associate Gen. Counsel, Michael E. Don, and Charles R. McConachie, Washington, D. C., of counsel), for respondent Securities Investor Protection Corp.
 
 
 4
 John S. Allee, New York City (James F. Parver, and Hughes Hubbard & Reed, New York City, of counsel), for respondent trustee for the liquidation of Weis Securities, Inc.
 
 
 5
 Before FRIENDLY and FEINBERG, Circuit Judges, and LASKER, District Judge.*
 
 
 6
 FRIENDLY, Circuit Judge.
 
 
 7
 On May 24, 1973, the Securities Investors Protection Corporation (SIPC) filed an application in the District Court for the Southern District of New York, pursuant to § 5(a)(2) of the Securities Investor Protection Act (SIPA), 84 Stat. 1636 (1970). SIPC asked the court to adjudicate under § 5(b)(1) that customers of Weis Securities, Inc. (Weis), a broker-dealer registered with the SEC, were in need of the protection afforded by SIPA and to appoint a trustee and an attorney under § 5(b)(3). The application was assigned to Judge Wyatt who was engaged in a long criminal trial. Then District Judge Gurfein, acting in his stead, granted the application on May 30, 1973, after conducting a thorough hearing. The trustee then applied for an order directing a general reference of the proceeding pursuant to § 22 of the Bankruptcy Act. Judge Gurfein on May 31 granted this application, entering an order which referred the proceeding generally to Referee (now Bankruptcy Judge) Roy Babitt to take such further action as would be appropriate under SIPA.[1]
 
 
 8
 Petitioners, who had purchased subordinated notes from Weis, filed their claims with the bankruptcy judge and participated in the liquidation proceedings before him. After the trustee had contested these claims and asserted counterclaims against two of them by commencing adversary proceedings pursuant to Bankruptcy Rules 701(1) and 713, these two petitioners, later joined by the others, suggested to the bankruptcy judge that the general order of reference was invalid. When he indicated that the question would be more properly directed to the district court, petitioners filed a paper with Judge Wyatt which he considered to be a motion to vacate the reference; on February 14, 1975 he denied this in an oral opinion.[2] On March 3 petitioners moved this court for a writ of mandamus to direct Judge Wyatt to vacate the reference and a writ of prohibition to prevent the bankruptcy judge from proceeding under it. Because we considered the issue to be one of general importance to the administration of SIPA, which should be settled so far as we have power to do so, we entertained the petition, set an expedited schedule for briefs and argument, and stayed the proceedings with respect to petitioners before the bankruptcy judge.[3] Since we considered it likely that Judge Wyatt's order was appealable by virtue of § 24, sub. a of the Bankruptcy Act, we directed that a notice of appeal be filed and this was done.
 
 
 9
 SIPA, which emanated from the committees of the Congress that generally concern themselves with securities rather than bankruptcy legislation,[4] is not an integral part either of the Securities Exchange Act of 1934 or of the Bankruptcy Act. See 3 Collier, Bankruptcy P 60.79 (1974). With respect to the Securities Exchange Act, § 2 of SIPA declares:[5]
 
 
 10
 Except as otherwise provided in this Act, the provisions of the Securities Exchange Act of 1934 (15 U.S.C., sec. 78a and fol.; hereinafter referred to as the "1934 Act") apply as if this Act constituted an amendment to, and was included as a section of, such Act.
 
 
 11
 The main provisions with respect to the Bankruptcy Act are the first sentence of § 5(b)(2):
 
 
 12
 Upon the filing of an application pursuant to subsection (a)(2), the court to which the application is made shall have exclusive jurisdiction of the debtor involved and its property wherever located with the powers, to the extent consistent with the purposes of this Act, of a court of bankruptcy and of a court in a proceeding under chapter X of the Bankruptcy Act.
 
 
 13
 the whole of § 6(c)(1):
 
 
 14
 Application of Bankruptcy Act.
 
 
 15
 (1) General provisions applicable. Except as inconsistent with the provisions of this Act and except that in no event shall a plan of reorganization be formulated, a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under, the provisions of chapter X and such of the provisions (other than section 60e) of chapters I to VII, inclusive, of the Bankruptcy Act as section 102 of chapter X would make applicable if an order of the court had been entered directing that bankruptcy be proceeded with pursuant to the provisions of such chapters I to VII, inclusive; except that the court may, for such period as may be appropriate, stay enforcement of, but shall not abrogate, the rights provided in section 68 of the Bankruptcy Act and the right to enforce a valid, nonpreferential lien or pledge against the property of the debtor. For purposes of applying the Bankruptcy Act in carrying out this section, any reference in the Bankruptcy Act to the date of commencement of proceedings under the Bankruptcy Act shall be deemed to be a reference to the filing date (as defined in section 5(b)(4)(B)).
 
 
 16
 and § 6(c)(2) which sets out "Special Provisions" to apply in SIPA liquidation proceedings in lieu of § 60, sub. e of the Bankruptcy Act.
 
 
 17
 At first blush it would seem rather plain that since § 22, providing for general references, is part of Chapter IV of the Bankruptcy Act,[6] such a reference is proper in liquidations under SIPA. After considering petitioners' arguments, we find this to be true on further blushes as well.
 
 
 18
 Petitioners' basic contention seemingly runs as follows: Since SIPA allegedly was enacted under the commerce power, when Congress in § 5(b)(2) conferred "exclusive jurisdiction" on "the court to which the application is made," it was referring to the district court as created pursuant to Article III of the Constitution and not to the "courts of bankruptcy" created by § 2 of the Bankruptcy Act (which by definition, § 1(9), "shall mean the judge or the referee of the court of bankruptcy in which the proceedings are pending") under the bankruptcy power, Article I, § 8. Consequently the governing rule with respect to references is Fed.R.Civ.P. 53, which, in permitting reference to a master, says that this "shall be the exception and not the rule," Fed.R.Civ.P. 53(b).[7] Petitioners seek to buttress this argument by a statement in the House Report recommending passage of SIPA that "the bill provides that SIPC members will be liquidated in special proceedings outside the Bankruptcy Act," 3 U.S.Code Cong. & Admin.News at 5262, 91st Cong., 2d Sess. (1970), and a similar statement by Senator Bennett on the floor, 116 Cong.Rec. 40905 (1970).[8]
 
 
 19
 So far as the argument rests on statutory interpretation, it flies in the face of the language and purposes of the Act. Even apart from § 6(c), § 5(b)(2) of SIPA itself declares that the court shall have "the powers, to the extent consistent with the purposes of this Act, of a court of bankruptcy and of a court in a proceeding under chapter X of the Bankruptcy Act." One of such "powers" is the power, conferred by § 22 of the Bankruptcy Act, to make a general reference to a referee in bankruptcy free from the restrictions of Fed.R.Civ.P. 53(b). Such power is not only "consistent with the purposes" of SIPA but essential.[9] In this case almost 34,000 "customer" claims were analyzed by the trustee,[10] who objected to some 1,700; informal hearings on these were held before the bankruptcy judge. The process for the determination of such claims did not differ in any significant respect from what would have been required in a large stockbroker bankruptcy before enactment of SIPA; the difference lies in the supersession of § 60, sub. e of the Bankruptcy Act by the somewhat altered Special Provisions of § 6(c)(2) of SIPA and the entitlement of "customers" as therein defined to benefit from the SIPC Fund. This is the kind of business for which bankruptcy judges have developed special expertness and administrative skills and which Congress did not intend to dump on already overburdened district courts without needed clerical and other facilities.
 
 
 20
 There would be no merit in a contention that a different conclusion is demanded because § 6(c) selects as the basic model for SIPA liquidations not ordinary bankruptcy but chapter X. The claim would be that while the second section of chapter X, § 102, directs that with certain exceptions
 
 
 21
 (T)he provisions of chapters I to VII, inclusive, of this Act shall, insofar as they are not inconsistent or in conflict with the provisions of this chapter, apply in proceedings under this chapter.
 
 
 22
 the reference provision of chapter X, § 117, is somewhat less broad than § 22, providing only, so far as here relevant, that
 
 
 23
 (t)he judge may, at any stage of a proceeding under this chapter, refer the proceeding to a referee in bankruptcy to hear and determine any and all matters not reserved to the judge by the provisions of this chapter or to a referee as special master to hear and report generally or upon specified matters. Only under special circumstances shall references be made to a special master who is not a referee.
 
 
 24
 Even if § 117 rather than § 22 were the controlling provision, the difference might be more apparent than real. A general reference in ordinary bankruptcy under § 22 does not include all the powers of the district judge, e. g., the issuance of an injunction to stay a court, which § 2, sub. a(15) of the Bankruptcy Act reserves to him. See also Bankruptcy Rule 102. The practical difference is that chapter X reserves many more matters for "the judge", see 6 Collier, Bankruptcy P 3.13 at 513-16 (1972). In contrast to chapter X SIPA refers to "the court".[11] More important, § 6(c) refers not simply to chapter X but also to "such of the provisions (other than section 60e) of chapters I to VII, inclusive, of the Bankruptcy Act as section 102 of chapter X would make applicable if an order of the court has been entered directing that bankruptcy be proceeded with pursuant to the provisions of such chapters I to VII." It is true that § 102 does not itself say in terms that all the provisions of chapters I to VII shall apply once an order is made directing that bankruptcy be proceeded with under those sections, an office performed by § 238. But that is its obvious sense, as is further demonstrated by its specific direction that the few sections of chapters I to VII expressly made inapplicable to chapter X proceedings prior to such an order shall become applicable when such an order has been made. We thus agree with 3 Collier, Bankruptcy P 60.86(3.2) at 1257 (1974), although on grounds different from the one there stated, see Karmel and Weissman, Taking Stock of the Court's Jurisdiction in a SIPA Liquidation, 41 Brooklyn L.Rev. 1, 8 (1974), that, with the qualifications noted above, " § 22 rather than § 117 should be regarded as applicable to a SIPA case." Whatever the House Committee and Senator Bennett may have meant by saying that SIPA liquidations were to be "special proceedings outside the Bankruptcy Act" and they could well have meant no more than that the Special Provisions of § 6(c)(2) rather than § 60, sub. e should govern[12] there is no occasion to exhume ambiguous legislative history in order to create a doubt that is not there. United States v. United Mine Workers, 330 U.S. 258, 319, 67 S.Ct. 677, 91 L.Ed. 884 (1947) (concurring opinion of Mr. Justice Frankfurter).
 
 
 25
 Lurking behind petitioners' arguments on statutory interpretation, which we find to be wholly without merit, there may be a constitutional one which is worth a bit more. The proposition would be that since SIPA was enacted under the commerce power, Congress cannot authorize a general reference to a person who is not an Article III judge. While in other circumstances a number of courts have perceived a tension between the practice of referring cases to magistrates and the purposes of Article I, section 1 of the Constitution, see, e. g., Ellis v. Buchkoe, 491 F.2d 716 (6 Cir. 1974) (per curiam ); TPO, Inc. v. McMillen, 460 F.2d 348, 353 (7 Cir. 1973), we need not here engage in that debate. Compare De Costa v. Columbia Broadcasting System, Inc., 383 F.Supp. 326, 333-34 (D.R.I.1974). See generally Note, Masters and Magistrates in the Federal Courts, 88 Harv.L.Rev. 779, 780-89 (1975). In enacting SIPA, Congress drew upon both the commerce power and the bankruptcy power. Cf. Murphy v. Colonial Federal Savings and Loan Ass'n,388 F.2d 609, 614-15 (2 Cir. 1967). Compare In re Penn Central Transportation Co., 384 F.Supp. 895, 952 (Sp.Ct.R.R.R.A.1974). As said in 3 Collier, Bankruptcy P 60.79 at 1229 (1974) with abundant supporting references, "SIPA draws heavily on the Bankruptcy Act." The bankruptcy power, including the power to create courts of bankruptcy not consisting wholly of Article III judges, is not limited to what Congress may choose to call a bankruptcy proceeding. The issues concerning the petitioners now before the bankruptcy judge are of the same type as could have arisen in a proceeding which avowedly was based solely on the bankruptcy power, a power "whose boundaries may not yet be fully revealed," Continental Illinois Nat'l Bank & Trust Co. v. Chicago, R. I. & P. Ry., 294 U.S. 648, 671, 55 S.Ct. 595, 604, 79 L.Ed. 1110 (1935). We have already indicated that we do not believe the initial adjudication under SIPA, the point where the commerce power aspect is most prominent, can be delegated to a referee, see note 11 supra. Whether other issues may arise in a SIPA proceeding the delegation of initial determination of which to a referee might be inconsistent with SIPA or even unconstitutional, we need not now determine; district judges can properly make general orders of reference and leave such questions to be raised when and if they should arise.
 
 
 26
 Consistent with their general approach that the Bankruptcy Act was inapplicable and that appellate jurisdiction would thus be governed by 28 U.S.C. §§ 1291 and 1292, neither of which would permit an appeal from Judge Wyatt's order, petitioners sought the issuance of writs of mandamus and prohibition. On the view we take of the case, § 24, sub. a of the Bankruptcy Act, which like § 22 is a part of chapter IV, applies to SIPA liquidations and Judge Wyatt's order was appealable as an interlocutory order under that section. Cf. SIPC v. Charisma Securities Corp., supra, 506 F.2d 1193 n. 2. Consequently, in these circumstances, mandamus and prohibition will not lie. Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 27-28, 63 S.Ct. 938, 87 L.Ed. 1185 (1943), and cases there cited; Ex parte Fahey, 332 U.S. 258, 67 S.Ct. 1558, 91 L.Ed. 2041 (1947). Compare Ex parte United States, 287 U.S. 241, 248-49, 53 S.Ct. 129, 77 L.Ed. 283 (1932); Ex parte Peru, 318 U.S. 578, 584-87, 63 S.Ct. 793, 87 L.Ed. 1014 (1947); Spacil v. Crowe, 489 F.2d 614, 621-22 (5 Cir. 1974). Accordingly, we dismiss the petitions for those writs and affirm on the appeal.
 
 
 
 *
 Of the District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 We are told that similar orders of general reference have been entered in 45 SIPA liquidation proceedings, including 18 in the District Court for the Southern District of New York, and that no previous challenge to the validity of such a reference has been made
 
 
 [2]
 The bankruptcy judge earlier had stayed further proceedings pending determination of the jurisdictional question by the district court
 
 
 [3]
 The stay ran only until argument; after hearing argument we declined to extend it
 
 
 [4]
 See Report of the House Comm. on Interstate and Foreign Commerce, H.R.Rep. No. 91-1613, 91st Cong., 2d Sess. (1970); Report of the Senate Comm. on Banking and Currency, S.Rep. No. 91-1218, 91st Cong., 2d Sess. (1970); Conference Report No. 91-1788, 91st Cong., 2d Sess. (1970). The House Report and the Conference Report are reprinted in 3 U.S.Code Cong. & Admin.News 5254, 91st Cong., 2d Sess. (1970)
 
 
 [5]
 SIPA was originally proposed as an amendment of the Securities Exchange Act. Senate Report, supra note 2, at p. 1
 
 
 [6]
 Section 22 provides:
 Reference of petitions. a. Unless the judge or judges direct otherwise, the clerk shall refer to a referee all cases filed under Chapters I to VII, Chapter XI, and Chapter XIII of this Act.
 b. The judge may, at any time, for the convenience of the parties or for cause, transfer a case from one referee to another.
 Until amendment in 1959, 73 Stat. 109, only the district judge was authorized to direct a reference. The change was made because such references had become a routine formality. H.R.Rep. No. 241, 86th Cong., 1st Sess. 2 (1959).
 
 
 [7]
 Also, although petitioners do not make the point, there is at least a theoretical distinction between a master, who acts merely in an advisory capacity to the judge, and a referee in bankruptcy who renders judgment subject to review by the judge. See 5A Moore, Federal Practice P 53.02(5) at 2913-14 (1974)
 
 
 [8]
 They also seek to buttress their argument by quoting from a report of a Special Task Force appointed by SIPC to consider possible amendments to SIPA that:
 Once the Federal District Court had adjudicated the need for SIPC protection and appointed a trustee, (the 1970 Act should) provide for a liquidation proceeding to be generally referred to the Bankruptcy Court in the territorial district in which the broker or dealer maintains its principal place of business, and that Bankruptcy Court shall have exclusive jurisdiction over the broker or dealer and its property wherever situated.
 Report of the Special Task Force to Consider Possible Amendments to the Securities Investor Protection Act of 1970, at 36 (July 31, 1974). Apart from the fact that, at best, such a report would have slight probative value concerning the intention of the 91st Congress, the argument is misleading in the extreme. The thrust of the Task Force Report was that the wholesale incorporation of the Bankruptcy Act by § 6(c) of SIPA was undesirable and that it would be better for Congress to specify particular sections, among them a provision for general reference. The Report does not cast the slightest doubt on the propriety of such a reference under existing law.
 
 
 [9]
 The general reference power would quite clearly not seem "inconsistent" with the purposes of SIPA under the test of inconsistency formulated by this court in SIPC v. Charisma Securities Corp., 506 F.2d 1191, 1195 (2 Cir. 1974):
 A provision is "inconsistent" with SIPA if it conflicts with an explicit provision of the Act or if its application would substantially impede the fair and effective operation of SIPA without providing significant countervailing benefits.
 
 
 [10]
 Section 6(a)(1) of SIPA provides that "specifically identifiable property" is to be returned to "customers of the debtor", as defined in § 6(c)(2)(A), as "promptly as possible." By November 30, 1973 all "customer" claims which had been received by the Trustee had been processed, with property valued at approximately $172,000,000 having been distributed, and attention was then focused on the approximately 3,000 "non-customer" claims which had been asserted
 
 
 [11]
 Despite this we do not believe the initial SIPA adjudication can be delegated to a referee or, consequently, that a general order of reference in a SIPA proceeding can be made by the clerk. But that is because the incorporation of these provisions of § 22 would be inconsistent with the basic purposes of SIPA. While SIPA was intended to establish a special procedure for the prompt and orderly liquidation of SIPC members when required so as to ensure prompt distribution and payment of valid customer claims, see Senate Report, supra note 4, at 10, House Report, supra note 4 at 9-10, these special procedures where to be activated only when there was "a danger that the broker-dealer may not meet its obligations to its customers." SEC v. Alan F. Hughes, Inc., 461 F.2d 974, 980 (2 Cir. 1972). We cannot believe Congress intended that this critical decision was to be delegated. Similarly, since prompt and orderly liquidations were an important goal of the Act, it would seem that Congress would have wanted the district court to ascertain in each case how this might be most efficiently achieved the reference decision being less of a ministerial act than in the case of an ordinary bankruptcy proceeding
 
 
 [12]
 Indeed, when the cited statement by Senator Bennett is read in context, such a conclusion appears not unreasonable; certainly as reasonable as the inference that petitioners would have us draw from it:
 Mr. President, this legislation establishes procedures for the prompt and orderly liquidation of SIPC members whenever required. These procedures are to be conducted as if they were under section 60(e) of the Bankruptcy Act, which section is the present bankruptcy law governing liquidation of stockbrokers. Certain shortcomings have become apparent in section 60(e), as it applies, specifically, to liquidation of broker/dealers. Therefore, this bill provides that SIPC members will be liquidated in special proceedings outside the Bankruptcy Act. The actual liquidation procedure will be conducted in accordance with, and as though it were being conducted under the provisions of chapter 10 of the Bankruptcy Act, which allows business reorganizations, provided however, that no plan of reorganization shall be filed. A trustee shall be appointed and shall have all the powers and duties of a trustee under the Bankruptcy Act. These liquidation procedures have been carefully designed to allow flexibility, to meet the special needs in liquidation of broker/dealers to assure that the customers can receive prompt return of their securities and cash held by such broker/dealers.
 
 
 [116]
 Cong.Rec. 40905 (1970)