**Edward S. REDINGTON, as Trustee for the liquidation of the business of Weis Securities, Inc., and Securities Investor Protection Corporation, Plaintiffs,**

v.

**TOUCHE ROSS & CO., Defendant.**

**No. 76 Civ. 1981.**

United States District Court, S. D. New York.

March 1, 1977.

Hughes, Hubbard & Reed, New York City, for plaintiff Edward S. Redington, as Trustee for the liquidation of the business of Weis Securities, Inc.; John S. Allee, James B. Kobak, Jr., William S. Barrett, New York City, of counsel.

Hawkins, Delafield & Wood, New York City, for plaintiff Securities Investor Protection Corp.; Clarence Fried, New York City, Wilfred R. Caron, Michael E. Don, Washington, D. C., Rafael Pastor, New York City, of counsel.

Rosenman, Colin, Freund, Lewis & Cohen, New York City, for defendant Touche Ross & Co.; Arnold I. Roth, James K. Nevling, Jr., Arthur Linker, Marc S. Dreier, Steven A. Asher, New York City, of counsel.

WYATT, District Judge.

This is a motion by defendant Touche Ross & Co. (Touche) to dismiss the complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, on two grounds: that the Court lacks subject matter jurisdiction, and that the complaint fails to state a claim upon which relief can be granted; in the alternative, it is sought to stay this

action pending determination of an action between the same parties in the New York Supreme Court, New York County.

### 1.

Weis Securities, Inc. (Weis), was a large stock brokerage house. Weis was a broker-dealer registered with the Securities and Exchange Commission (SEC) and was a member of the New York Stock Exchange and of other stock exchanges. Weis is said to be a corporation, although where incorporated does not appear; its principal place of business is said to have been in the City of New York.

Touche is a firm of certified public accountants and acted as such for Weis.

In May 1973, Securities Investor Protection Corporation (SIPC) applied to this Court for a decree adjudicating, under the Securities Investor Protection Act of 1970 (15 U.S.C. §§ 78aaa and following; "SIPA"), that customers of Weis were in need of protection under SIPA, appointing a trustee for the liquidation of Weis, and affording other relief. This Court granted the application and appointed Edward S. Redington as Trustee (referred to usually as the "Trustee"). The proceedings in which the Trustee was appointed are described in *Exchange National Bank v. Wyatt*, 517 F.2d 453 (2d Cir. 1975). The Trustee was appointed on May 30, 1973; the "filing date" (15 U.S.C. § 78eee(b)(4)(B)) was May 24, 1973. Weis has since been in liquidation under SIPA.

### 2.

On July 3, 1975, the Trustee and SIPC commenced an action against Touche in New York Supreme Court, New York County (Index No. 13996/76; the action has a 1976 number because the first paper filed in the action was in 1976). The causes of action of each plaintiff were separately stated but there were in the complaint 21 paragraphs of "common allegations" which were then incorporated by reference in each claim of the Trustee and in each claim of SIPC. There were five causes of action by the Trustee and four causes of action by SIPC.

### 3.

The case at bar was commenced in this Court on April 30, 1976. The parties are the same as those in the State action. The Trustee and SIPC are again suing Touche.

The complaint in the case at bar asserts exactly the same claims as in the State action and adds claims by the Trustee and SIPC based on alleged violations by Touche of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78a and following; "the 1934 Act"), specifically of Section 17 of the 1934 Act (15 U.S.C. § 78q).

The "common allegations" are the same in both actions except that three paragraphs have been added here to shore up the added Section 17 claims of the Trustee and SIPC.

In this action, there are 6 claims by the Trustee and 8 claims by SIPC. (The claims are mistakenly called causes of action in the complaint, ignoring Fed.R.Civ.P. 8 and following the nomenclature in the State courts.)

The two plaintiffs have joined as such (presumably under Fed.R.Civ.P. 20(a) and properly) but their claims are several, not joint, and are stated in separate counts.

Counts two through six of the complaint in the case at bar are exactly the same as the five causes of action of the Trustee in the State action. Count one in the case at bar is the added claim under Section 17 of the 1934 Act.

The first four claims of SIPC in the case at bar are not in the State action and are apparently intended to be based on Section 17 of the 1934 Act although in the first four counts there is no express reference to Section 17 (except as paragraphs 1, 16, 17, 21, and 22 of the complaint are incorporated by reference in these counts). The other four SIPC claims in the case at bar are exactly the same as the four SIPC causes of action in the State action.

**4.**

The claims in the case at bar are alleged to arise under the 1934 Act and particularly under Section 17 thereof (15 U.S.C. § 78q), under Section 6 of SIPA (15 U.S.C. § 78fff), and under the common law (complaint, para 1).

The complaint avers that the Court has jurisdiction over the claims of the Trustee under Section 27 of the 1934 Act and under 28 U.S.C. § 1331. It further avers (in effect) that the Court has jurisdiction in bankruptcy by virtue of Section 6 of SIPA (15 U.S.C. § 78fff), under Sections 2a(7), 102 and 115 of the Bankruptcy Act (11 U.S.C. §§ 11a(7), 502 and 515), and under 28 U.S.C. § 1334. The complaint also avers jurisdiction over the common law claims of the Trustee under principles of pendent jurisdiction (complaint, para 2).

Jurisdiction over SIPC's claims is alleged to exist under Section 27 of the 1934 Act and 28 U.S.C. § 1331, under the diversity of citizenship statute (28 U.S.C. § 1332) and under principles of pendent jurisdiction (complaint, para 3).

There then follows a series of "Common Allegations" comprising 24 paragraphs of the complaint which are incorporated by reference in both the six counts pleaded by the Trustee and the eight counts pleaded by SIPC.

The complaint avers that five of Weis' officers misstated the financial condition and results of operation of Weis in financial reports prepared at the end of fiscal year 1972, and that such reports were required to be filed with regulatory authorities pursuant to Section 17 of the 1934 Act. It alleges that these reports were directly or indirectly submitted to Weis, its Board of Directors, the SEC, SIPC, the Exchange, and Weis' customers, creditors, lenders and shareholders.

Plaintiffs aver that Touche breached duties it assumed toward them under Section 17 of the 1934 Act and under the common law when it became Weis' auditor and undertook to perform all necessary auditing and accounting services needed to audit the reports of financial condition that Weis was required to submit to the SEC. Essentially, these "common allegations" charge Touche with negligence and recklessness in the performance of its services (para 28); SIPC argues that they also charge wilful misconduct (Memorandum of Plaintiff SIPC in Opposition to Defendant's Motion to Dismiss, p. 5). The complaint also alleges that Touche falsely certified that it had performed the necessary services and made false representations with respect to the Answers to Financial Questionnaire and other documents dated May 26, 1972. The "common allegations" then state that because of these failures and misrepresentations of Touche, the Exchange, the SEC and SIPC were prevented from knowing the true condition of Weis, and were prevented from acting to safeguard the assets of Weis and the property held by Weis for its customers; and that Weis continued to undertake financial obligations which it could not satisfy. As a result of the failure to act of the regulatory authorities, the liquidation of Weis became necessary when the facts were discovered. This was after the Weis assets and the property held by it for customers had been further depleted, and when it was too late to take remedial action. Upon liquidation, SIPC was required under SIPA to provide the Trustee with funds for the payment of claims submitted by customers and "certain other creditors" of Weis.

Paragraphs 32–49 of the complaint state six claims by the Trustee against Touche. The first claim charges that Touche violated, and aided and abetted the Weis officers in violating, Section 17 of the 1934 Act and the rules and regulations promulgated thereunder, which require broker-dealers (such as Weis) to file accurate reports of their financial condition, including reports such as those certified by Touche. It further states (para 34) that "Weis, its Board of Directors, its creditors, customers, lenders and shareholders were among the class of persons which Section 17 of the 1934 Act was designed to protect and were among the beneficiaries of duties imposed on Touche Ross by Section 17 of the 1934 Act",

and that the injuries which occurred as a result of the liquidation of Weis were of the type that Section 17 was intended to prevent.

The Trustee's other five claims state that Touche breached duties to Weis under the common law of New York. The second claim charges Touche with negligence per se in violating Section 17 of the 1934 Act. The third charges Touche with negligence and malpractice. The fourth charges Touche with recklessness and gross negligence. The Trustee's fifth claim charges breach of contract. The sixth claim charges breach of express and implied warranties that Touche would comply with generally accepted auditing standards, generally accepted accounting principles, and the audit regulations of the Exchange and the SEC.

In paragraphs 52–85 of the complaint, SIPC alleges eight claims against Touche, four on its own behalf and four on behalf of Weis' customers and certain other creditors. The first four claims allege violations of Section 17 of the 1934 Act and the others allege violations of the common law.

SIPC's first claim is under Section 17 of the 1934 Act and charges that Touche failed to comply with the auditing standards and regulations prescribed by the 1934 Act and the rules promulgated thereunder in that opinion letters, answers to the financial questionnaire and financial statements prepared by Touche were false, inaccurate and incomplete, and that as a consequence the SIPC fund has been depleted in order to satisfy the claims of 34,000 customers and other creditors. Its third claim (also under Section 17) charges that Touche had knowledge, or, but for its errors and omissions, would have had knowledge, of the deceptions caused by the Weis officers in violation of the 1934 Act and that Touche aided and abetted the Weis officers in this deception. The fifth claim (under common law) charges Touche with negligence and malpractice. The seventh claim (under common law) charges Touche with recklessness and gross negligence. SIPC's second, fourth, sixth and eighth claims are the same respectively as the first, third, fifth and seventh claims above described except that the second, fourth, sixth and eighth claims aver that Touche violated duties to the customers and certain other creditors of Weis and that SIPC is subrogated to the claims which such customers and other creditors could have asserted, this because SIPC has compensated them out of the SIPC fund.

### 5.

As seen above, the Trustee's first claim and the first, second, third, and fourth claims of SIPC are asserted under Section 17 of the 1934 Act (15 U.S.C. § 78q).

The argument for Touche is that there is no provision in Section 17 for a private right of action (as, for example, there is in Section 16) and that no private right of action is maintainable under Section 17.

The argument for plaintiffs is that, while no private right of action is expressly provided for in Section 17, a right of action should be implied for parties such as SIPC, the Trustee and customers and creditors of Weis who are said to fall within the "class for whose *especial* benefit the statute was enacted", citing *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975; emphasis in original), which quoted from *Texas & P. R. Co. v. Rigsby*, 241 U.S. 33, 39, 36 S.Ct. 482, 60 L.Ed. 874 (1916).

### 6.

If there were any violations by Touche of Section 17, they occurred in 1972. Since then, there have been extensive amendments (in 1975) to Section 17 but in 1972 the relevant part of Section 17 read as follows:

"Every national securities exchange, every member thereof, every broker or dealer who transacts a business in securities through the medium of any such member, every registered securities association, and every broker or dealer registered pursuant to section 78o of this title, shall make, keep, and preserve for such periods, such accounts, correspondence, memoranda, papers, books, and other

records, and make such reports, as the Commission by its rules and regulations may prescribe as necessary or appropriate in the public interest or for the protection of investors. Such accounts, correspondence, memoranda, papers, books, and other records shall be subject at any time or from time to time to such reasonable periodic, special, or other examinations by examiners or other representatives of the Commission as the Commission may deem necessary or appropriate in the public interest or for the protection of investors."

■ From the wording of this provision and in the context of the other provisions of the 1934 Act, it would appear that Section 17 was designed to supply administrative guidance in the bookkeeping area and not to create any rights in anybody. Section 17 has also been used as authority for the inspection program of the SEC, which is somewhat like the inspection work of the bank examiners.

In the 43 years during which the statute has been on the books, there has been no decision whether a private right of action can be asserted for a violation of Section 17. The Supreme Court, about a year ago, refused to consider whether there was such a private cause of action. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 fn. 13, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

There is nothing explicit to show any legislative intent respecting a private claim under Section 17.

The section, however, is entitled "Accounts and records, reports . . . ." and the very next section is entitled "Liability for misleading statements". This next section, Section 18 (15 U.S.C. § 78r), creates a private cause of action for "misleading statements" in "any application, report, or document filed pursuant to this chapter . . . ." in favor of any person who purchased or sold a security at a price affected by the misleading statements. The subject matter of the two sections, their titles, and their juxtaposition would strongly suggest a legislative intent that the *only* private claim for a violation of

Section 17 was the claim created in Section 18. Plaintiffs here are obliged to argue that there is an implied private claim under Section 17 *broader* than the claim *expressly* created by Section 18. This is because they did not purchase nor sell any security "at a price affected . . . " etc., and thus cannot state a claim under Section 18. In this connection, it may be well to recall the words of the Supreme Court in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 736, 95 S.Ct. 1917, 1925, 44 L.Ed.2d 539 (1975):

"Section 18 of the 1934 Act, prohibiting false or misleading statements in reports or other documents required to be filed by the 1934 Act, limits the express remedy provided for its violation to 'any person . . . who . . . shall have purchased or sold a security at a price which was affected by such statement . . . .'. It would indeed be anomalous to impute to Congress an intention to expand the plaintiff class for a judicially implied cause of action beyond the bounds it delineated for comparable express causes of action."

Sections 13(a) and 13(d) of the 1934 Act (15 U.S.C. § 78m(a) and (d)) require the filing of specified reports by issuers and the filing of reports by those who acquire more than 5% of a registered equity security. Claims have been asserted under this Section by those who were not purchasers or sellers of any security and who thus could not state a claim under Section 18. They asked the Courts, as the plaintiffs do here, to imply a private right of action from the section alleged to have been violated. The Courts have declined to do so, holding that Section 18 is the only civil liability provision for a violation of the "reporting provisions" of the 1934 Act. *Meer v. United Brands Co.*, CCH Fed.Sec.L.Rep. ¶ 95,648 (S.D.N.Y. July 6, 1976; Carter, J.); *Myers v. American Leisure Time Enterprises*, 402 F.Supp. 213 (S.D.N.Y.1975; Weinfeld, J.), affirmed without opinion 538 F.2d 312 (2d Cir. 1976); *In re Penn Central Securities Litigation*, 347 F.Supp. 1327, 1340 (E.D.Pa.1972), affirmed 494 F.2d 528 (3d Cir. 1974).

In *In re Penn Central Securities Litigation*, cited above, the District Court stated (347 F.Supp. at 1340):

"Section 13 is one of a number of provisions that require the filing of applications, documents and reports. See §§ 12(b), 12(g), 15(b)(1), 15A(a), 16(a) and 17(a). Section 18(a) is the 'catch-all' civil liability provision for all of the reporting requirements of the Exchange Act, and we conclude that it is the exclusive remedy for violation of § 13(a)."

Opposed to the suggestion that the only protection intended for a violation of Section 17 was the liability created in Section 18, is the argument that customers of brokers and dealers in their dealings with such brokers and dealers can never rely on the relief provided by Section 18 because in such dealings they can never meet the purchaser-seller requirement of that section. Section 17, runs the argument, was intended to protect those who choose to leave securities they have purchased, or cash resulting from securities they have sold, with their broker. Section 17's purpose is to protect these people by requiring their brokers to file reports with the SEC so that the SEC (and now SIPC as well) might police their activities so as to ensure the solvency of brokers.

Although Section 18 might not, of itself, foreclose the implication of a private right of action under Section 17, this does not mean that Section 18 is irrelevant to the question here.

It should be noted that when Congress wanted to create private causes of action for violations of provisions of the 1934 Act, it knew how to do it and did do it. In addition to the "reporting" violations made the subject of private rights of action in Section 18, Congress specifically provided for civil liability in Section 9(e) (15 U.S.C. § 78i(e)) and Section 16(b) (15 U.S.C. § 78p(b)) of the 1934 Act. Congress also provided for "liabilities of controlling persons" in Section 20 of the 1934 Act (15 U.S.C. § 78t).

■ Nor is it necessary to imply a civil liability under Section 17 in order to en-force its provisions. There can be a criminal prosecution. *United States v. Sloan*, 389 F.Supp. 526 (S.D.N.Y.1975). The SEC can secure an injunction where a violation is proved of Section 17, described by Judge Tenney as "the bookkeeping rule". *SEC v. Resch-Cassin & Co., Inc.*, 362 F.Supp. 964, 979 (S.D.N.Y.1973).

It remains to consider *J. I. Case Company v. Borak*, 377 U.S. 428, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) on which plaintiffs properly rely. In *Borak* a private right of action was implied for a violation of Section 14(a) of the 1934 Act (15 U.S.C. § 78n(a)) despite the lack of any provision therein for a private right of action and despite the existence of the civil liability provision in Section 18 (15 U.S.C. § 78r).

*Borak* was a suit by a stockholder of Case, the management of which solicited proxies for voting in favor of a merger of Case with another corporation. It was alleged that the proxy solicitation material was false and was in violation of Section 14(a) of the 1934 Act; that the merger would not have been approved by stockholders were it not for the false and misleading statements; and that the stockholders of Case had been damaged.

Section 14(a), together with an SEC Rule prescribed thereunder, makes it unlawful to solicit proxies by means of a proxy statement to stockholders containing false or misleading statements.

There is nothing in the statute which requires any filing with the SEC of proxy statements or other soliciting material. But the regulations of the SEC under Section 14(a) require that "preliminary copies" of the proxy statement or other soliciting material be filed with the SEC, as well as "definitive copies". 17 CFR § 240.14a–6

Soliciting material is plainly intended for the information of the stockholders, not of the SEC. The SEC has only an oversight or policing function.

In *Borak* a private right of action was implied because plaintiff, one of the stockholders solicited, was of the class intended to be protected by the statute; and because

such private action was a "necessary supplement to Commission action" (377 U.S. at 432, 84 S.Ct. 1555) since the SEC had not the time for an "independent examination" of the soliciting material filed with it (377 U.S. at 432, 84 S.Ct. 1555).

▪ But the case at bar is not like *Borak*. The reports required by Section 17 in 1972 were not for the information of any "investors" and were not sent to them but were for the SEC, primarily for monitoring the net capital requirements of the 1934 Act (Section 8(b); 15 U.S.C. § 78h(b)). Moreover, in examining the records and reports made under Section 17(a) the SEC does not have the time limitations applicable to the *Borak* proxy statements (ten days in some cases (17 CFR § 240.14a–6(a)) and two days in others (17 CFR § 240.14a–6(b)). The SEC has an inspection program, similar to that of bank examinations. It is not "necessary" to enforce Section 17 by private actions; criminal prosecutions and SEC injunctive actions seem abundantly sufficient. If, as is the case, the record keeping requirements of Section 17 are to give early warning to the SEC of financial difficulties of a broker and thus avoid liquidation, it cannot help to imply a private right of action *after* liquidation has become a fact.

The Supreme Court has refused to expand the *Borak* principle; indeed, the Court has restricted it.

In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court refused to imply a private right of action for a violation of 18 U.S.C. § 610. The Court referred to *Borak* as an instance where there was "a pervasive legislative scheme governing the relationship between the plaintiff class and the defendant class in a particular regard" (422 U.S. at 82, 95 S.Ct. at 2090). There is no such "pervasive legislative scheme" in the case at bar.

And only last week, the Supreme Court, reversing our Court of Appeals, declined to imply a private right of action under Section 14(e) of the 1934 Act. *Piper v. Chris-Craft Industries, Inc.*, ⸺ U.S. ⸺, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977).

The test was whether "the creation by judicial interpretation of the implied cause of action . . . is *necessary* to effectuate Congress' goals" (emphasis supplied). This test has already been applied here and no such implication found "necessary".

The Supreme Court determined that plaintiff in *Chris-Craft* was not an intended beneficiary of the legislation. Here, neither the Trustee nor SIPC could possibly have been meant to be protected by Section 17, if for no other reason because the SIPA legislation was not passed until more than thirty years after Section 17. Additionally, neither the Trustee nor SIPC is an investor.

The case of *Lank v. The New York Stock Exchange*, 548 F.2d 61 (2d Cir. 1977), is instructive in this respect. There our Court of Appeals refused to imply a private right of action in the receiver of a member of the Exchange under Section 6 of the 1934 Act. The Court emphasized that brokers were not investors to be protected by the 1934 Act and that Section 6 was not enacted "for the purpose of affording protection to the very members of the stock exchanges whose conduct was being regulated . . . .". This analysis seems applicable to the plaintiffs in the case at bar.

▪ Finally, Section 17 does not impose any duty on accountants. It specifically mentions a "national securities exchange", the members thereof, a "registered securities association", brokers, and dealers; it does not mention accountants. While the regulations do contain provisions respecting an accountant's certificate (17 CFR § 240.-17a–5(f)(g)(h)(i)), the oath is only by the broker or dealer (17 CFR § 240.17a–5(b)(2)). Judge Weinfeld discussed the problem in *Rothstein v. Seidman & Seidman*, 410 F.Supp. 244 (S.D.N.Y.1976) where he emphasized that a "special instruction" of the New York Stock Exchange laid a duty on its members but not on their accountants.

It is concluded that the Trustee's first claim and the first, second, third, and fourth claims of SIPC must be dismissed for failure to state a claim upon which relief can be granted.

### 7.

The other five claims of the Trustee are common law claims. The question is whether this Court has any jurisdiction of them. It seems clear that this Court has no jurisdiction.

Pendent jurisdiction will not justify retention of these claims. The federal claim of the Trustee in count one has been dismissed before trial and we are instructed that, in such event, "the State claims should be dismissed as well". *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)

The Trustee asserts an independent basis for jurisdiction under the general language of 11 U.S.C. § 11(a)(7).

The situation at bar, however, is controlled by 11 U.S.C. § 46 which provides that a trustee in bankruptcy may sue only in the courts where the bankrupt might have sued.

Section 6(c)(1) of SIPA (15 U.S.C. § 78fff(c)(1)) states in relevant part:

"Except as inconsistent with the provisions of this chapter and except that in no event shall a plan of reorganization be formulated, a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under, the provisions of Chapter X and such of the provisions . . . of chapters I to VII, inclusive, of the Bankruptcy Act as section 502 of Title 11 would make applicable if an order of the court had been entered directing that bankruptcy be proceeded with pursuant to the provisions of such chapters I to VII, inclusive . . . ".

Section 502 of Title 11 states in relevant part:

"The provisions of chapters 1 to 7, inclusive of this title shall, insofar as they are not inconsistent or in conflict with the provisions of this chapter, apply in proceedings under this chapter: *Provided, however,* That section 46 . . . shall not apply in such proceedings unless an order shall be entered directing that bankruptcy be proceeded with pursuant

to the provisions of chapters 1 to 7, inclusive." (emphasis in original)

Thus Section 46 of Title 11 is applicable to SIPA liquidations.

The arguments for the Trustee have been considered but cannot be accepted.

It may be mentioned that the Trustee urges a consent by Touche to the jurisdiction of this Court, a consent said to flow from the filing by Touche of a claim for professional services in the Weis liquidation. But the claim filed by Touche in the Weis liquidation was for accounting work in *European offices of Weis* in late 1972 and early 1973, as well as for a Stock Exchange audit as of April 27, 1973. The claim by the Trustee against Touche does not arise out of any work done for Weis by Touche and for which Touche filed a claim in the Weis liquidation. The claims are not "mutual" therefore but are unrelated and the consent of Touche cannot be found. *Cherno v. Engine Air Service, Inc.*, 330 F.2d 191 (2d Cir. 1964)

Under 11 U.S.C. § 46 we look to see whether Weis could have sued Touche in this Court. It seems undisputed that the principal place of business of Weis (28 U.S.C. § 1332(c)) was in New York and that members of the Touche firm are citizens of New York. Diversity jurisdiction would not exist of an action by Weis against Touche.

The second, third, fourth, fifth and sixth claims of the Trustee must be dismissed for lack of jurisdiction over the subject matter.

### 8.

The fifth, sixth, seventh, and eighth claims of SIPC are common law claims. As to these, SIPC argues for diversity jurisdiction on the ground that it should be considered for diversity purposes as a District of Columbia corporation. This argument cannot be accepted.

Under SIPA, SIPC was created as a corporation but it distinctly was *not* made a District of Columbia corporation. The relevant part of SIPA (15 U.S.C. § 78ccc(a)(3)) provides that SIPC is "subject

to" the District of Columbia Nonprofit Corporation Act and has "all the powers" conferred on a nonprofit corporation by that Act. This does not mean, however, that it *is* a District of Columbia corporation. Note should be taken of the Act of Congress creating The American National Red Cross. Named persons are created "a body corporate and politic in the District of Columbia" (36 U.S.C. § 1a). For diversity purposes, the Red Cross is a citizen of the District of Columbia because the statutory language is specific, in marked contrast to that in SIPA. *Patterson v. Amer. Nat. Red Cross*, 101 F.Supp. 655 (S.D.Fla.1951).

SIPC appears to be a federally created corporation which, like the American Legion (36 U.S.C. § 41), the Disabled American Veterans (36 U.S.C. § 90a) and others, is not a citizen of any state for jurisdictional purposes. *Hancock Financial Corp. v. Federal Savings, etc.*, 492 F.2d 1325 (9th Cir. 1974); *Rice v. Disabled American Veterans*, 295 F.Supp. 131 (D.C.D.1968).

There can be no jurisdiction simply because SIPC was created by Act of Congress because there is no stock ownership in SIPC by the United States. 28 U.S.C. § 1349.

Finally, the Trustee is a citizen of New York and is a plaintiff along with SIPC. Partners of Touche, the defendant, are citizens of New York. Thus, there is no complete diversity of citizenship within the rule of *Strawbridge v. Curtiss*, 3 Cranch 267, 2 L.Ed. 435 (1806).

The fifth, sixth, seventh, and eighth claims of SIPC must be dismissed for lack of jurisdiction over the subject matter.

Settle order and judgment on notice.